# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NIKEYA PROCTOR,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 4:17-cv-00165-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |

## OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for decision. Nikeya Proctor ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.  Procedural History and Childhood Disability**

Plaintiff received supplemental security income ("SSI") benefits based on disability as a child. (Tr. 10). In May 2009, Plaintiff was provided with an Individualized Education Plan ("IEP") due to her disorders in attention, visual, and auditory processing which affected her progression in reading, comprehension, and math. (Tr. 213-22). She was on track to get a certificate of high school completion but needed to improve her grades in order to pass the high school exit exam. She was interested in attending college and worked selling newspapers. (Tr. 213-17). She was polite, quiet, and non-disruptive, and did well with individual work when she applied herself. Her social behavior was "school appropriate," she interacted socially with her peers, and behavior management was not needed. (Tr. 213-17, 220).

As required by law, eligibility for SSI benefits was re-determined when Plaintiff attained age eighteen. (Tr. 10). Plaintiff turned eighteen in April 2009, and it was determined Plaintiff was no longer disabled as of September 1, 2014. Id. at 10, 12, 19. At the administrative hearing,

3

Plaintiff appeared and waived right to counsel, and a vocational expert also testified. Id. at 10. On September 22, 2015, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 10-21). On February 22, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 422.210(a).

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges five errors: (1) The Appeals Council failed to properly consider new evidence; (2) the Plaintiff was not given proper notice regarding representation and the ALJ failed in his duty to fully develop the record; (3) the finding that Plaintiff's impairment does not meet a Listing is not supported by substantial evidence; (4) the ALJ failed to properly consider the medical source opinions; and (5) the ALJ's evaluation of the Plaintiff's allegations is not supported by substantial evidence. (Pl. Br. at 3-4, Doc. 22).

**A.     Post-Decisional Evidence**

**1.     Appeals Council**

Plaintiff states the Appeals Council erred in finding the additional evidence did not relate to the relevant time period. (Pl. Br. at 4). The ALJ reviewed the record in order to make a decision. Evidence submitted to the Appeals Council is evaluated if it is new, material, and related to the period on or before the date of the ALJ's decision. Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004). When the Appeals Council rejects additional evidence in support of a claim, and the plaintiff objects, the court may review the information to resolve the matter of whether it was correctly rejected. Krauser v. Astrue, 638, F.3d 1324, 1328 (10th Cir. 2011). The Appeals Court noted:

> We also looked at the records from Indian Health Care Resource Center dated August 31, 2016 (16 pages). The ALJ decided your case through September 22, 2015. This new information is about a later time. Therefore, it does not affect

4

the decision about whether you were disabled beginning on or before September 22, 2015.

If you want us to consider whether you were disabled after September 22, 2015, you need to apply again.

(Tr. 2). The undersigned has also reviewed the additional evidence and agrees the Appeals Council reasonably found the new evidence dated after the ALJ's September 22, 2015 decision. (See Supp. Tr. 296-311). The evidence related to a time period after the decision, and thus, it did not provide a basis for changing the decision. (Tr. 2). Plaintiff argues the new evidence supports the opinion of the psychological consultative examiner. (Pl. Br. at 5). However, the additional evidence shows Plaintiff continued to report the same issues the ALJ considered, i.e., learning disorder, anxiety, disorder, and depressive disorder. (See generally Tr. 296-311).

**B.      Right to Counsel and ALJ Duty to Develop**

Plaintiff states she was not given proper notice regarding her right to counsel at the hearing, and the ALJ should have further developed the record. (Pl. Br. at 6-7). Plaintiff signed a waiver of her right to representation on the same day as the hearing. (Pl. Br. at 7) (citing Tr. 124). A District Court in New Mexico recently reviewed a case where the plaintiff alleged he did not knowingly waive the right to counsel:

> The Social Security Administration's ("SSA") Hearings, Appeals and Litigation Law Manual ("HALLEX") requires where a claimant is unrepresented, "the ALJ will ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation." SSA, HALLEX I-2-6-52, available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-52.html. ALJ's are not required to "recite specific questions regarding the right to representation or the claimant's capacity to make an informed choice about representation." Id. If a claimant is illiterate, the ALJ must explain that both free and contingent representation is available to the claimant. Id. …
>
> The Tenth Circuit only requires written notice that advises a claimant of their right to be represented by counsel. See Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996) (neither 42 U.S.C. § 404.1706 406(c) nor 20 C.F.R. § 404.1706 requires more than written advisement of the claimant's right to be represented);

5

Garcia v. Califano, 625 F.2d 354, 356 (10th Cir. 1980) (neither the statute nor the regulations require anything more than written notice of the claimant's right to representation by an attorney).

Villalobos v. Colvin, No. CV-15-00463-CG, 2016 WL 10588059, at *4 (D. N.M. Mar. 29, 2016).

As Plaintiff signed a written notice waiving her right to counsel, the ALJ satisfied the requirements of HALLEX and the Tenth Circuit. (Tr. 124). "The ALJ's duty to develop the record is heightened when a claimant is unrepresented. However, a claimant's pro se status does not, in and of itself, mandate a reversal." See Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). In this case, the ALJ reviewed Plaintiff's impairments and evidence in the record:

> The claimant has the following severe impairments: learning disorder, anxiety disorder, and depressive disorder …
>
> At the administrative hearing, the claimant testified about her background and medical condition. The claimant testified that she was not working at the time of the hearing. She stated that she lived by herself in an apartment. The claimant confirmed that she received a certificate for completing the 12th grade. She also verified at least 51 percent of her classes were in regular classes. The claimant alleged that learning problems, anxiety, and depression limited her ability to work. The claimant contended that she had difficulty comprehending and completing tasks. She claimed that she took longer than others when she attempted to complete tasks. In terms of activities of daily living, she testified that she read, went to the library, performed math problems, performed chores, cleaned, used public transportation, prepared meals, and shopped for groceries …
>
> Edward Jasinski, Ph.D., a psychologist, testified as a medical expert. Dr. Jasinski was present at the hearing by telephone and reviewed all the medical exhibits of record prior to testifying. He had the opportunity to question the claimant. He testified that there was little support in the evidence or school records to support the opinion of the psychological consultative examiner. He elaborated that there is insufficient evidence in the file to find that the claimant had marked mental limitations. He implied that the impairments neither singly nor in combination met or equaled a medical listing. Based on his education, knowledge, experience, and review of the record, he indicated in his opinion, the claimant would have the following limitations: the claimant would be limited to simple repetitive tasks with limited social interaction …
>
> On September 10, 2014, [Kathy Vandenburgh, Ph.D.] evaluated the claimant. The claimant complained of learning problems, anxiety, and depression. The mental status examination revealed the following positive findings: the claimant was easily stressed, felt depressed, had problems focusing, appeared

childlike, and had difficulty persisting through tasks. Cognitive testing revealed scores in the extremely low range, including a full-scale IQ score of 59. The findings from the mental status examination were otherwise unremarkable. Dr. Vandenburgh diagnosed mood disorder and learning disorder. Based on the examination, from a psychological standpoint, she opined that the claimant had moderate to marked mental limitations, including having marked impairment working in a typical work setting.

(Tr. 12, 15, 17-18). Thus, the ALJ reviewed the opinions of the psychologists and Plaintiff's severe impairments of a learning disorder, anxiety disorder, and depressive disorder. From the record, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple repetitive tasks; she can have no team-oriented tasks; she can have no public contact; and there can only be simple changes in the work environment or at the worksite.

(Tr. 15). The ALJ formulated the RFC from consideration of all of the evidence. At the hearing, the ALJ questioned Plaintiff:

> ALJ: We're here because of a request that you filed on a continuing disability review case. Your request for hearing was March 12, 2015. Your exhibit folder has the following pre-marked exhibits in it. There was one sent to you in the mail. Did you take the time to open it?
>
> CLMT: Yes.
>
> ALJ: Okay. On that disk, it has the following numbered exhibits. 1A through 4A, 1 through 11B, 1 through 5D, 1E through 16E, 1F through 10F. Do you know any legal reasons why any of those documents do not belong in your file folder?
>
> CLMT: No, I do not.
>
> ALJ: All right. They're received into evidence at this time.

(Tr. 32). Plaintiff contends the ALJ should have obtained additional school records, but she does not specify how those records would have changed the decision. (Pl. Br. at 8). Plaintiff also contends the ALJ's questions were not adequate. (Id. at 9-10). However, the ALJ confirmed with Plaintiff she went to the library, read young adult books, and had never been on any medications or been hospitalized. (Tr. 38) ("You enjoy going to the library. You read young adult books. You've never been on medications for psychiatric issues nor have you been hospitalized, is that correct?" "Yes."). Id.

Plaintiff further argues Dr. Jasinski did not testify how Dr. Vandenburgh's report was inconsistent with the rest of the record. (Pl. Br. at 9). Dr. Jasinski stated he did not "see any evidence of" Dr. Vandenburgh's finding of Plaintiff's "childlike presentation" from the medical exhibits, other interactions, and school records." (Tr. 34).

In sum, the record in this case was adequately developed and included Plaintiff's IEP, the limited medical visits to Kaiser, two psychological evaluations, and testimony from a medical expert. See Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. The duty to develop the record is limited to fully and fairly developing the record as to material issues." The record was sufficient to render a decision regarding Plaintiff's disability claim, and the ALJ was not required to further develop the record.

//
//
//
//

C.   **Listed Impairment**

1.   **12.05(B) Intellectual Disability**

Plaintiff contends the ALJ erred by finding Plaintiff did not meet the requirements of Listing 12.05(B) (intellectual disability). (Pl. Br. at 10-11). Listing § 12.05(B) provides a claimant is disabled per se as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied …
>
> B. A valid verbal, performance, or full scale IQ of 59 or less.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B).[2] From the definition, the ALJ found Plaintiff's IQ scores were invalid:

> The claimant had a full-scale IQ score of 59, processing speed score of 65, working memory score of 63, and perceptual reasoning score of 56. However, the [ALJ] finds that these scores are not valid. These scores do not reflect the claimant's true cognitive functioning based on the other evidence of her adaptive functioning. For example, these scores are inconsistent with the claimant's ability to complete the 12th grade. In addition, these scores are contradicted by the absence of significant mental health findings in the record. In addition, these scores are inconsistent with the claimant's ability to read, go to the library, and solve math problems. These scores are also at odds with the [ALJ's] personal observations that the claimant was able to comprehend and understand questions at the hearing. Lastly, these scores are contradicted by the testimony of the impartial medical expert, who opined that these findings are inconsistent with the medical records. Accordingly, the [ALJ] finds that these IQ scores are invalid.

(Tr. 14). Thus, the ALJ found Plaintiff did not meet the requirements for Listing 12.05 (intellectual disability). While Dr. Vandenburgh concluded Plaintiff had a had a full-scale IQ score of 59 (Tr.

---

[2] The agency issued new regulations concerning the mental listings in September 2016, which took effect on January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Since these changes were not in effect at the time of the ALJ's decision in this case, the Court cites the September 2015 version of the regulations.

9

252), the ALJ found this score invalid due to Plaintiff's ability to complete the 12th grade, read books, go to the library, and solve math problems. (Tr. 14). Moreover, the ALJ cited the testimony of Dr. Jasinski, who found the evidence in the record was inconsistent with the low IQ scores. (See Tr. 34). See also Flores v. Astrue, 285 F. App'x 566, 568–69 (10th Cir. 2008) (unpublished)[3] (holding that "[i]t is within the province of an ALJ to make factual determinations regarding the validity of an IQ score, that is, whether the IQ score is 'an accurate reflection of [a claimant's] intellectual capabilities'" and finding that it is proper for an ALJ to consider the narrative report accompanying the IQ testing "because 'the results of intelligence tests are only part of the overall assessment.'"). In this case, the ALJ found Plaintiff's other activities and finishing high school demonstrated evidence of her adaptive functioning and inconsistent with low IQ scores. (Tr. 14). Moreover, Dr. Vandenburgh diagnosed Plaintiff with borderline intellectual functioning, not intellectual disability. (Tr. 253). Plaintiff's IEP was for standard learning disabilities as opposed to intellectual disabilities. (Tr. 291-92). The absence of a diagnosis of intellectual disability is notable, as the medical criteria for a diagnosis of intellectual disability mirrors the criteria of the capsule definition of Listing 12.05. See 67 Fed. Reg. at 20,022. Therefore, substantial evidence supports the ALJ's finding Plaintiff did not meet the criteria for intellectual disability under Listing 12.05(B).

**D.     Weight to Medical Evidence**

    **1.     State Agency Psychologists**

Plaintiff contends the ALJ improperly evaluated and weighed the medical source opinions. (Pl. Br. at 11). In the decision, the ALJ made the following observations regarding the reports by the state agency psychologists:

---

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential but may be cited for their persuasive value."

> The [ALJ] has given great weight to the opinion of the impartial medical expert, Dr. Jasinski … his opinion regarding the claimant's functional limitations is highly credible because it is well supported by the objective medical evidence already discussed in this decision.
>
> The [ALJ] assign[s] partial weight to the opinion of the State agency psychologists. These opinions found that the claimant was limited to unskilled work and should avoid hazards. The limitation to unskilled work is generally consistent with the claimant's ability to complete the 12th grade. Further, these opinions are supported by the absence of significant limitations or positive findings in the records. In addition, these opinions are consistent with the claimant's ability to perform activities of daily living normally. However, the [ALJ] does not adopt the limitation of avoiding hazards. This limitation is inconsistent with the claimant's ability to use public transportation and go outside independently. In addition, the [ALJ] has included additional limitations such as avoiding the public and being limited to simple changes in the workplace to take into account for the claimant's subjective complaints about anxiety and focusing on tasks. The [ALJ] has adopted those specific restrictions on a function-by-function basis [because they] are best supported by the objective evidence as a whole.
>
> The [ALJ] assigns little weight to the opinion of the psychological consultative examiner, Kathy Vandenburgh, Ph.D. … The [ALJ] assigns little weight to this opinion because it is inconsistent with substantial evidence. First, it is inconsistent with the claimant's ability to complete the 12th grade and receive a certificate of completion. Further, this opinion is contradicted by the claimant's ability to perform activities of daily living normally, such as using public transportation, dressing herself, performing personal care tasks, going out of the house independently, reading, and managing funds. Third, this opinion is internally inconsistent because the mental status examination noted that the claimant was able to recall details, able to "focus on tasks," and able to recall four digits forward. Fourth, this opinion is contradicted by the opinion of the impartial medical expert who opined that there was no support in the record for the examiner's limitations. The [ALJ] assigns more weight to the opinion of the medical expert because he had an opportunity to review the entire file. Last, her opinion is inconsistent with the evidence. For example, the examiner stated that the claimant was immature and childlike. Yet, school records confirm that the claimant was polite, quiet, non-disruptive, and she performed well with individual work. Accordingly, the [ALJ] assigns little weight to this opinion.

(Tr. 17-18.) Plaintiff states Dr. Vandenburgh's opinion is entitled to the greatest weight. (Pl. Br. at 15). Plaintiff argues the ALJ supplied no reasoning for giving the opinion little weight. Id. Plaintiff states the ALJ found the opinion inconsistent with the ability to complete the 12th grade. Id. Plaintiff states she struggled to complete the 12th grade by taking special education classes due

to disorders in attention, visual, and auditory processing. Id. Plaintiff also states the ALJ failed to explain how the opinion was inconsistent with the activities of daily living. Id.

The ALJ discounted Dr. Vandenburgh's opinion that Plaintiff had moderate to marked mental limitations, including having marked impairment working in a typical work setting, because it was inconsistent with the record evidence. (Tr. 18; Tr. 253-54). See 20 C.F.R. § 416.927(c)(4) (an ALJ considers whether an opinion is consistent with the record as a whole). Specifically, the ALJ found the opinion was inconsistent with Plaintiff's ability to complete the 12th grade as well as her testimony she read and solved math problems at home. (Tr. 18, 37). Moreover, her IEP indicated she worked "well" on individual problems and had no more than moderate limitations. (Tr. 13, 216, 226). Somewhere between fifty and seventy percent of her classes were in general education, as opposed to special education. (Tr. 18, 39, 226). The ALJ also found Dr. Vandenburgh's opinion was inconsistent with Plaintiff's activities of daily living. (Tr. 15, 18). Plaintiff was able to use public transportation, care for her personal needs, read, manage her funds, and live by herself. (Tr. 15, 18, 37). See Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) (claimant's daily activities were a reason for rejecting treating physician's opinion the claimant was totally disabled).

Plaintiff alleges Dr. Vandenburgh never said she had problems focusing, and therefore, her report was not internally inconsistent as the ALJ concluded. (Pl. Br. at 13). Plaintiff also contends Dr. Vandenburgh was not inconsistent, as the ALJ found, when she observed Plaintiff was immature and childlike in contrast to school reports of her being polite, quiet, non-disruptive, and performing well. Id. Dr. Vandenburgh noted Plaintiff was able to recall details, "focus on tasks," recall four digits forward, had no difficulty following a simple routine or instructions, and had no difficulty paying attention for at least two hours. (Tr. 251, 254). The ALJ noted this was

inconsistent with Dr. Vandenburgh's opinion Plaintiff would have a marked impairment in a job setting. (Tr. 18, 253-54). See 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); 20 C.F.R. § 416.927(c)(4) (consistency); see also Castellano, 26 F.3d at 1029 (ALJ reasonably discounted treating physician opinion which was not supported by his own notes).

Finally, Plaintiff argues the ALJ found Dr. Vandenburgh's opinion was contradicted by the medical expert, Dr. Jasinski. (Pl. Br. at 13). Plaintiff states the ALJ erred in giving Dr. Jasinski's opinion great weight because he was a mental health specialist, was aware of all the medical evidence, and has an understanding of the disability program. (Pl. Br. at 13-14) (citing Tr. 17). Dr. Jasinski opined there was no support in the record for Dr. Vandenburgh's opinion, and it was inconsistent with record evidence. (Tr. 34-36). Dr. Jasinski observed while Dr. Vandenburgh stated Plaintiff was child-like, school records indicated otherwise. (Tr. 34). Notably, school records observed Plaintiff was polite, quiet, non-disruptive, and performed well with her individual work. (Tr. 18, 216, 253).

Plaintiff argues the ALJ erred in reasoning Dr. Jasinski was aware of all the medical evidence. (Pl. Br. at 15). Plaintiff notes Dr. Vandenburgh reviewed all of the evidence except for the IEP report. (Pl. Br. at 15) (citing Tr. 214). Plaintiff notes Dr. Jasinski did not say the IEP report was inconsistent. (Pl. Br. at 15). Indeed, Dr. Vandenburgh diagnosed Plaintiff with borderline intellectual functioning, not intellectual disability. (Tr. 253). Plaintiff's IEP was for standard learning disabilities as opposed to intellectual disabilities. (Tr. 291-92).

Thus, the ALJ could properly rely on Dr. Jasinski's opinion to find Plaintiff could perform simple repetitive tasks with the limitations of no team-oriented tasks; no public contact; and only

13

be simple changes in the work environment or at the worksite. (Tr. 15). Plaintiff has not shown an additional limitation was required in the RFC. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")

**E.     Credibility Analysis**

Plaintiff states the ALJ erred in finding her allegations of disabling limitations not credible. (Pl. Br. at 16-18). Plaintiff further states the ALJ erred by noting she failed to seek treatment and her daily activities were inconsistent with disabling limitations. (Id. at 16-17). The ALJ reviewed the record to evaluate Plaintiff's credibility:

> The [ALJ] finds that the claimant's activities of daily living are inconsistent with the claimant's testimony regarding disability and demonstrate the capacity for work. At the hearing, the claimant confirmed that she read, went to the library, performed math problems, performed chores, cleaned, used public transportation, prepared meals, and shopped for groceries … Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermines the credibility of the claimant's allegations of disabling functional limitations because such activities are inconsistent with disability …
>
> The [ALJ] discounts the claimant's credibility based on her failure to seek regular treatment. The claimant reported a history of depression, anxiety, and learning disorder, but the objective evidence is devoid of significant evidence of the claimant ever seeing a psychiatrist consistently, being hospitalized for psychiatric treatment, or receiving any specialized psychiatric care. This is inconsistent with the alleged severity of her mental limitations and functional limitations and diminishes the credibility of those allegations. Further, nowhere in the record does the claimant indicate that the reason for the long gaps in treatment was an inability to pay or lack of insurance. Accordingly, based on the evidence in the record, the failure to seek consistent care undermines the claimant's claims of disabling symptoms …
>
> The evidence of record fails to support greater limitations than those assessed above. The claimant made subjective complaints about difficulty with comprehension and focusing. School records also suggest that the claimant was below grade level in certain subjects. Despite the claimant's complaints, however, the medical evidence of record reveals mild findings. First, there is minimal evidence in the record to establish any significant limitations. Second, the claimant

reported that she was able to complete the 12th grade. Third, the claimant was polite, was qu[iet], and worked well with individual work. In addition, the claimant was able to participate in normal educational classes for 70 percent of the school day. Last, the IEP report and Kaiser Permanente records failed to note any significant limitations. Accordingly, the evidence of record is consistent with the above RFC assessment.

(Tr. 16-17). Although recently the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult ...

Soc. Sec. Ruling ("SSR") 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)).[4]

> At step one of the process, "[a]n individual's symptoms ... will not be found to affect the ability to perform work-related activities for an adult ... unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ ... and the consistency or compatibility of nonmedical testimony with objective medical evidence.

---

[4] SSR 16-3P was issued after the date of the ALJ's decision in this case. However, the two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In this case, the ALJ found the objective medical evidence did not support Plaintiff's allegations. (Tr. 16-17). While school records suggested she was below grade level in certain subjects, she was able to complete the 12th grade and participate in seventy percent general education classes (rather than special education). (Tr. 17, 39, 216, 226, 253). Moreover, medical records failed to note any significant mental or physical limitations. (Tr. 17, 227-48). See 20 C.F.R. § 416.929(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); see also SSR 96-7p, 1996 WL 374186, at *6-7 (stating an ALJ may consider the objective medical evidence in evaluating allegations).

The ALJ also discounted Plaintiff's statements because she did not seek regular treatment for her alleged history of anxiety, depression, and learning disorder. (Tr. 17). See 20 C.F.R. § 416.929(c)(3)(iv)-(v) (an ALJ considers the type of treatment). Plaintiff acknowledges lack of treatment may be a valid reason for the allegations of depression and anxiety, but it would be invalid for an untreatable learning disorder. (Pl. Br. at 16). Although Plaintiff may not need to see a psychologist for a learning disorder, she nevertheless alleged depression and anxiety, and her failure to seek treatment for these conditions erodes her credibility, as noted by the ALJ.

> A claimant's failure to seek medical treatment is a proper factor in assessing the credibility of a claim of severe impairment. See SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996); Keyes-Zachary, 695 F.3d at 1167 (stating that when evaluating credibility, the ALJ should consider, among other items, the claimant's regular contact with a physician and her willingness to try any prescribed treatment).

White v. Berryhill, 704 F. App'x 774, 778 (10th Cir. 2017). Moreover, she did not allege she could not afford treatment. (Tr. 16).

Finally, the ALJ's observations at the administrative hearing led him to conclude that Plaintiff's statements were not consistent. (Tr. 16). Plaintiff was well dressed and groomed, had direct speech, understood and answered all questions, gave testimony, remembered events,

addresses, and phone numbers, and had a clear understanding of the proceedings. (Tr. 16). Plaintiff contends the ALJ should not have used this to discredit her allegations of disabling limitations. (Pl. Br. at 16-17). While not conclusive by itself, the ALJ could consider this as a factor in making his findings. See Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a claimant's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."). A district court in Kansas upheld a decision where an ALJ gave the greatest weight to a psychological assessment and found the plaintiff's allegations not credible based on the evidence in the record:

> In making his RFC findings, the ALJ gave the greatest weight to the opinions of Dr. Ward because, according to the ALJ, the opinions of Dr. Ward were based upon personal observations and objective testing. For this reason, the ALJ found symptoms not credible to the extent that they are inconsistent with the RFC. Plaintiff alleges error because of the ALJ's failure to include in the RFC a finding that plaintiff needs constant reminders to stay on task. However, Dr. Ward did not include such a limitation in his report, and such a limitation was not mentioned in the mental RFC assessment by Dr. Stern or in the mental RFC assessment by Dr. Cohn. No medical opinion evidence supported this limitation. Furthermore, the ALJ gave valid reasons in his decision for discounting the testimony of the plaintiff and his father on this issue, citing to school records (which included a teacher's report showing no limitation in the ability to attend and complete tasks), the fact that plaintiff completed high school, passed a driver's test, and could learn simple tasks. The court will not reweigh the evidence. On these facts, substantial evidence supports the decision of the ALJ not to include this limitation in his RFC findings.

Mellington v. Astrue, No. 10-1362-SAC, 2011 WL 6055576, at *5 (D. Kan. Dec. 6, 2011). Similarly, in this case, the ALJ found Plaintiff's allegations of disabling limitations not credible based on the findings by Dr. Jasinski; school records showing Plaintiff attended 51-70 percent regular classes; by Plaintiff's IEP; and obtained a certificate from completing high school. (Tr. 15, 17-18, 39, 226). Thus, the ALJ could properly rely on this evidence to find Plaintiff could perform simple repetitive tasks with the limitations of no team-oriented tasks; no public contact; and only simple changes in the work environment or at the worksite. (Tr. 15). Plaintiff has not shown an additional limitation was required in the RFC. The Court is not to disturb an ALJ's credibility

findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). Plaintiff fails to demonstrate how any alleged error would have changed the outcome of the case. See Sanders, 556 U.S. at 409-10. Based on the foregoing, substantial evidence supports the ALJ's credibility determination. See SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED on July 24, 2018.

**Gerald B. Cohn**
**United States Magistrate Judge**